And we'll call the next matter of Yates v. FDIC. And, Counsel for Ms. Yates, just let me know when you're ready. And, Mr. Brooks, you can hear us okay? Yes, I can, Your Honor. And can you hear me as well? We can. Thank you. Counsel, you may proceed. Thank you, Your Honor. May it please the Court, Counsel, Matthew Kalmanson for Diana Yates. Ms. Yates has been in litigation against the federal government since 2015, both the Department of Justice and the FDIC. She has fought both vigorously since then, including in a seven-week white-collar criminal trial that was hard fought, resulted in a conviction on some counts, and was reversed in full by this Court. At no point has Ms. Yates conceded guilt or liability or given any indication that she did not contest the charges against her. She has fought every step of the way, both before the Department of Justice, in the District Court, and before the ALJ. Excuse me. Now, there is no question that mistakes were made in this case, and we concede that. But for the FDIC to default her under the circumstances presented here, in our view, is indicative of retaliation, given the history between these parties. And at a minimum, it's an abuse of discretion. Now, I'd like to start with the standard of review. And obviously, it's an abuse of discretion. And I think the Court is well aware of the test for good cause that applies in this case. And it seems that the FDIC has abandoned most of what it argued below, and is focusing only on the meritorious defense prong. Can I just ask, retaliation for... I didn't know that you would... Are you making a separate... Do you have a separate theory of retaliation? And if so, where is that? And retaliation for what? Thank you, Your Honor. If you look at the decision of the ALJ and the Board, they refer numerous times to a pattern of obstruction and delay. And they refer to things like motions that were brought earlier in this case, rather than filing an answer. And these motions were really standard-of-care motions that were brought in any parallel proceeding. There were motions to stay these cases so they could assert the Fifth. And it looks like that was used against us in deciding that there was no good cause. The second thing that was held against us that we think was improper was the interlocutory appeal that happened on whether there was a hearing or not. That was ultimately reversed by the FDIC Board. But if you look at the opinion by the ALJ, it seems clear that the ALJ disagreed with that opinion, and seemed to hold that against Miss Yates also, and find that there was no good cause in this case. So when we say retaliation, we think that there is a long history between the FDIC and Miss Yates. The FDIC was very much involved in the criminal trial. They were the key witness in that case. So the long history is because the agency believes that Miss Yates engaged in wrongdoing, which is why they initiated this proceeding. So I guess that's sort of what they're supposed to do, right? If they think somebody has done something wrong, they bring a proceeding. And so to say that they're then retaliating when they continue to litigate that proceeding, I'm finding a little hard to understand. Correct, Your Honor. And I think it goes to sort of the first point I'd like to make before I get to the meritorious defense, which is that the ALJ and the Board really applied the wrong rule here. And I don't want to belabor this point, because I understand that meritorious defense by itself could be enough in certain circumstances to find an absence of good cause. But we believe that the ALJ and the Board was relying on factors that really it should not have considered in the good cause analysis. So I understand what Your Honor is saying. The FDIC certainly has every right to vigorously prosecute its case. But when looking at good cause, and we see things in the opinion that talks about the fact that Miss Yates didn't file an answer, has tried to delay these proceedings through the start, and that there's strategic gamesmanship going on, and the failure to answer in this case was part of that pattern, that seems like the types of factors that the Court should not have considered, because all Miss Yates was doing was asserting her Fifth Amendment rights. She never testified to the criminal case. And she was correct, ultimately, that the criminal conviction would be reversed, and she would still have those Fifth Amendment rights when it came back. So she was just trying to be careful. Counsel, I know we keep interrupting you, but this is an odd case. And so if I could just ask you some questions procedurally, then I want to propose something. So just procedurally, just to confirm my understanding. So the verdict in this case, in the criminal case, November 2017. The verdict happened in November 2017. That's correct. Then there is the litigation or the briefing before the ALJ. There is a long delay, and the ALJ is reassigned, and then issues an order. So there's a Supreme Court case. It's actually even more complicated than that. But yes, that is correct, Your Honor. So the ALJ issues its recommendation, essentially, to the Board. It looks like it's in January of 2019. And there's briefing by both parties to the ALJ. On whether to lift the stay at that point. Correct, Your Honor. And then the FDIC issues its order that's on appeal in this case in July of 2019. I don't know the exact date, but that is the order of things, yes. Then the Ninth Circuit in the Yates case, which I think Judge Miller is somewhat familiar with, that decision comes down in 2021, correct? Again, I'm not sure of the exact date, but yes. But that's the order? Yes. Okay. So here's my question, is that it seems to me that the ALJ's decision, or recommendation, and the FDIC's decision, and certainly the FDIC's briefing to the court, relied heavily on the criminal conviction in this case. They cited it over and over and over again. And if you look at the ALJ's order or recommendation and you compare it to the indictment, it's basically the same, it's basically the indictment repeated. Correct, Your Honor. With all that in mind, and now that we know now that the theory in that case was invalid, according to the Ninth Circuit, shouldn't we simply vacate the FDIC's order, send it back to the FDIC and say, you guys needed to do over? Because so much of the thinking here was relying on the fact that there was a criminal conviction, which we now know essentially never existed, and send it back. All these issues about whether the email was sent or opened or not opened and good cause, fine. But at the end of the day, isn't that really what this case is about? Why shouldn't we do that? Yes, Your Honor, I agree. I think you have it exactly right. The decision that there was no meritorious defense relied heavily on the fact that there was a criminal conviction. The ALJ quoted that in its opinion. The FDIC quoted that in its adoption of the ALJ's opinion. They both noted that Ms. Yates stated in the answer that she ultimately filed that she was relying on the same facts and evidence that she had submitted in the criminal case, and then they both noticed that that criminal case resulted in a conviction. That conviction has since been reversed. I think everyone concedes, everyone agrees in this case, that the notice of charges and the criminal convictions essentially are identical. They track each other. So, yes, Your Honor, I think that is the simplest outcome here, which is the sort of factual predicate on which the ALJ and the Board relied no longer exists. So we know there's a meritorious defense because this Court has said so. And so, yes, we would ask you to send it back for that reason. And then if we were to do that, then would we have to decide all these other things about the email and why it wasn't opened or lawyers changing? Would we have to get into any of that if that's what we did? No, Your Honor. No, Your Honor, especially considering the FDIC's brief in this case, which only relies on meritorious defense. There is some statements, perhaps I was belaboring too much in my opening remarks, about willfulness and maybe it wasn't quite willful, but it showed a pattern of disregard. The FDIC has not repeated any of that on appeal. So I agree with you, Your Honor. Thank you. But what about, I mean, I'm looking at the FDIC's order, page 8 of the order, page 9 of the executive record, and it discusses the conviction, but then it acknowledges that the Board acknowledges the respondent's conviction is currently subject to appeal, but the answer contains no specific facts that would indicate that she has a meritorious defense in the civil enforcement action. So why shouldn't we read that as, well, one way to read that is as sort of an independent finding that regardless of what happens in the appeal, we still don't think she has a defense to the civil proceeding. And if that's what they're saying, then why would we need to vacate just because of the result of the appeal? Thank you, Your Honor. I think the FDIC, or at least the Board in this opinion, and the ALJ did say both of those things, but they are related because the answer itself has a statement in there that states that Ms. Yates does not wish to waive the Fifth and is relying on the evidence and argument that was adduced at trial in the criminal case. It then goes through the notice of charges and denies and admits what it can deny and can admit. And so the way I read the ALJ's order and the FDIC Board's adoption of that order is that you have only provided what they call a general denial, which we disagree with. I don't think this is a general denial. It is a denial that goes through each allegation. And to the extent you're relying on what happened in the criminal case, you can't do that because you were convicted. So I see those two things as related because there is that statement in the answer that specifically states we are relying on the evidence and argument that occurred in the criminal case. So they have to deal with that in some way. And the way they deal with that is by saying there's a conviction. So I think they are related. And can you – you said you don't think it's a general – because as you know we have cases that say that a general denial is not sufficient to show that somebody has a meritorious defense. Can you elaborate on why you think that – because the answer here just sort of says, you know, we deny Paragraph 1, we deny Paragraph 2 and so forth. Why is that not a general denial within the meaning of those cases? Thank you, Your Honor. So my understanding of a general denial is a general denial just is a one-sentence line that says we deny the allegations. And it doesn't really take on the specific paragraphs or allegations that are in a complaint or in a notice in this case. If you look at the answer, which is at ER 106, and you compare it to the notice, which is at ER 273, it does in fact go through each specific allegation. And so we can just look at a few as an example. For example, Paragraph 12 states, On or about July 26, 2010, Yates approved the $675,000 wire transfer, which was executed the same day. That allegation is specifically denied. And so it's not a general denial. It's saying that that is not accurate. And so would it be better if Ms. Yates instead had a sentence that said, I deny that on or about January 26, Yates approved the $675,000 wire transfer. It's the same thing. I mean, she is going through each specific allegation, agreeing with what she can agree with. You'll notice that anything that talks about what she knew or her intent was denied because she disputes that. And so just because she didn't put it in a sentence and just said denied, instead of repeating the allegation, I would not call that a general denial, Your Honor. And I would also add that if you actually look at the facts of the cases that talk about general denials being not enough, or they are cases where there is some legal bar of some sort. For example, there's the U.S. v. Aguilar case. There's someone in this panel who authored that also. There was a complete legal bar to a defense in that case. That had to do with forfeiture, and the defendant just had no right to those proceeds. And he said it's not enough just to deny it when you have this legal bar to you proceeding. The same is true in the Franchise Holdings case. There was admission of liability in that case. So, again, the court said you can't just say I deny when there is an admission of liability. In this case, there is no admission of liability. There is no legal bar. The closest thing we would get to that is the criminal conviction. And as Your Honor has recognized, the criminal conviction has been reversed. So we have specific denials to these allegations. The FDIC knows exactly what our defenses are. It knows that we contest what we said we contest in this notice of intention. And so I think it's distinguishable from those cases, Your Honor. It looks like I only have a minute and 40 seconds left. I'd love to save that for rebuttal. We'll round up to two minutes. Okay. Thank you.  Good morning, Your Honor. Good morning, Your Honors, and may it please the court. I am Joseph Brooks from the FDIC's Appellate Litigation Unit. While it is true that this case, Amnesia's criminal case, involved the same conduct, they nevertheless involve different statutes, different legal theories. And so, therefore, the decision in the criminal case is not controlling here. Now, as I believe it was Judge Miller pointed out, this case, first of all, the ALJ did not rely solely or even principally on a criminal conviction. In ER 86, in his decision, he says, respondent elected to offer general denial to the majority of the factual claims offering no countervailing facts. Excuse me. And in the decision in order of the board, the board said the same thing. As a matter of fact, the board both minimized the importance of the conviction to its decision and emphasized the importance of the mere general denial. That's at ER 9 of the board's decision, which says, although the board acknowledges that respondent's conviction is currently subject to appeal, the answer contains no specific facts that would indicate that she has a meritorious defense in this civil enforcement action. And the court goes on to quote this court's holding and franchise holding that, quote, a mere general denial without facts to support it is not enough to justify vacating a default or a default judgment. Counselor, if I could just jump in here, though, because one of the filings that the FDIC filed to the ALJ, it's called the FDIC's reply to Yates' response in opposition to order to show cause upon default, which was, I think, one of the last pleadings before the ALJ. If I could direct you to ER, I think it's 104. If you take a look at ER 104, it says, respondent has established no meritorious defenses. And in the second paragraph it says, the FDIC understands that this defense was also raised in a parallel criminal proceeding against the U.S. Justice Department and found to be unpersuasive. And then it goes on to say in that same paragraph, respondent was found guilty of one count of conspiracy to commit bank fraud and 12 counts of making false bank entries in a parallel criminal proceeding. Respondent's criminal convictions weigh against any prediction that the outcome of this enforcement proceeding would deliver any less than a substantial reward of the relief sought by the FDIC. So how can we say the criminal conviction played no role when the FDIC is arguing to the ALJ that it does play a role? Well, for precisely this reason, Your Honor, what is before this court is the FDIC board's decision in order. And to the extent that that decision in order incorporates the ALJ's recommended decision, that is here as well. Enforcement counsel may have made a number of arguments. Indeed, the board expressly rejected enforcement counsel's argument. There had been prejudice here, but that is not what's before the court. Various and sundry arguments that were made. What's before the court is whether or not the FDIC board abused its discretion when it held Ms. Yates in default. And with respect to this issue of whether what we have here is a general denial, discussed in our brief are two of this court's cases, Madsen versus Bum, in which this court affirmed a default judgment based on lack of a meritorious defense because, quote, Madsen's proposed answer consists of a mere general denial without facts to support it, unquote. And even more particularly to the point argued by counsel that an answer with general denials all over the place is not a, quote, general denial would be this court's decision in Bazaar versus D, also discussed in our brief, where this court said respondents, quote, denied all of the allegations in Bazaar's complaint, but this unsubstantiated general denial did not constitute a meritorious defense. So what we have here is a lack of any relevant facts, strictly general denials with respect to claims that were not and could not have been raised in the Yates criminal case. So Mr. Brooks, so it's your position then if Ms. Yates had gone to trial and was I think that's true, Your Honor. But let's take a look at the place that we are in. Well, hold on. I just want to make sure that that is your position. You're saying that if there had been a full out acquittal on every single count, you're saying that the briefing to the ALJ would have been identical. The rationale would have been identical. The board, the FDIC would still have referenced the indictment. And it's what you did. And it's the order that's before us right now. It did multiple times. You're saying everything would be the same. No, Your Honor. Yes, everything would be the same. And I would be arguing the same positions I'm arguing here. And here is why. What this court found was an inappropriate legal theory in Ms. Yates' criminal case had to do with a practice that she had engaged in of having loans paid off by third parties so they wouldn't show up as delinquents. Your Honor, nowhere in the FDIC's notice of charges, nowhere in the board's decision, nowhere in the ALJ's recommend decision will you find that theory. However, however, this court also in the Yates case explicitly acknowledged that the legal theory that permeates the FDIC's notice, quote, from this court's decision in Yates, diversion of a bank's funds for unauthorized purposes, unquote, is a valid legal theory. That's all we have here. And Your Honor, the statute here doesn't have the complications that this court was wrestling with under federal bank fraud statute as to its element. Counsel, I understand the idea that the theories are not identical, but I'm looking at the board's decision on page five, and it references the fact that Respondent was found guilty of 13 of the 19 counts charged. If that was completely irrelevant, why is the board talking about it? Well, Your Honor, that's not the point that I'm arguing. At the time that the board rendered this decision, the conviction stood, and that was relevant. But what I'm arguing here is... Well, if it was relevant that the conviction stood, then why isn't it relevant that the conviction's been invalidated? Because that was neither the principle nor the only basis on which the board relied. As I pointed out, the board relied primarily on the lack of any facts to support the general denials. As the language I just read indicates, Your Honor, the court acknowledged the criminal conviction, acknowledged the argument that was on appeal, but said notwithstanding that, your answer includes nothing but general denials, see franchise holding. But Your Honor, there's another very important development here to keep in mind. We are not dealing in a situation where everything has been denied and nothing exists. As the court knows, we have submitted to the court a guilty plea. Counsel, that guilty plea you're on, I mean, come on. That's to an 18 U.S.C. 2014. That's a misdemeanor. I haven't been in a for a long time. That's a complete giveaway in this case. I understand. So don't argue that helps your case. That actually makes your case, in my look, far worse. It's not better, it's worse. If I may try to make a point on that, Your Honor, as we stated in our 28J letter, we're not relying on the fact that a conviction resulted under that misdemeanor statute. We specifically said it is the admissions in the guilty plea that matter. And at page 7 of that guilty plea, Ms. Yates admits the following. She admits that she knew that a piece of Oriel property previously owned by the FDIC had been lost. She admits that she knew that it was now held by Fannie Mae, that Fannie Mae had put it up for sale under terms which provided that only a first-time home buyer could buy it and that an investor such as the bank could not. She specifically admits that. That's dishonesty, Your Honor. But has the board analyzed that plea? Oh, absolutely. Has the board analyzed the plea? Right. So the plea was to 18 U.S.C. 2014, which was not charged in the indictment. It was an information done after this court's decision in Yates. Has the board analyzed that plea? The board has not had occasion to analyze it, Your Honor. So shouldn't we send it back to the board to analyze that plea instead of post hoc assuming that this somehow supports what the board did? You do not need to do that, Your Honor, because this plea completely verifies the allegations in one of, you'll recall in our brief, we pointed out that the four related series of transactions. As to the one that deals with the straw buyer transaction, these admissions satisfy every one of the three elements required under 12 U.S.C. 1818E. They show an improper act. I mean, maybe they do, maybe they don't. But I think the point of Judge Owens' question is under Chenery, we have an order from the board that was not based on that plea. So the order either stands or falls on the merits of what was before the board when it issued that order. And I don't see how we can uphold it on the basis of something that's in a subsequent plea. I agree with that, Your Honor. The only reason for bringing that to the court's attention was the suggestion that somehow everything here was innocent. But we rely on what we relied in our brief before that plea. We rely on the fact that the theory here is diversion of a bank's funds for fraud. And unlike the other two theories, the presentation to the jury of which led to Ms. Yates having her conviction vacated, this theory, this court expressly acknowledged was a valid theory. So we don't have an invalid theory. Second of all, and because of that, the decision in Yates' criminal appeal actually supports the FDIC. But moreover, this court's decision in Yates says nothing about unsafe or unsound practices, a much more lenient standard. It says nothing about breaches of fiduciary duty, a much more lenient standard. It says nothing at all about Section 1818E, and it says nothing at all about 12 CFR Section 362, which prevents banks from making speculative real estate purposes. So the point being that nothing that Ms. Yates presented to the FDIC, including her reference to the Yates criminal case, and I'm not sure what that reference is worth in the face of her general denials. Certainly she's not suggesting the ALJ had to comb through the criminal record. What she presented, mere general denials, did not in any way, shape, or form undermine the FDIC's charges with respect to this theory, again, acknowledged by this court, and with respect to the statutes and the rules that the FDIC is administering. In short, the Yates criminal case really has nothing at all to do with this case. It is true that an ALJ looking at this matter before the Yates case was reversed could allude to it. It is true that the board could, in its own words, acknowledge it, but it is equally true, undisputable, these opinions are clear. Neither the FDIC board nor the ALJ relied in principal part on this conviction in the criminal case. They both clearly stated their concern. Consistent with this court's decision in franchise holding, a mere denial without facts to support it is not enough to justify vacating a default or default judgment. Applying this court's holding in that case to all of the information Ms. Yates provided, the court reached that decision. Excuse me, the board reached that decision. And I would hasten to add that not only in her answer, but in any briefs that she filed in this matter, and there were many of them, in her exceptions filed before the board below, Ms. Yates could have raised facts. Indeed, she could have done it under this court's decisions in her briefing in this case. But to this date, Ms. Yates has not provided any specific facts in connection with these matters other than the specific facts that we alluded to in her guilty plea. So we'll put them to one side. We still have a record with nothing but general denials. Can I ask, what sort of facts do you think she should have put in the answer? Counsel, your friend on the other side, said you look at the notice, you look at the answer, and the notice has various paragraphs of you made various transfers and there was insufficient funds and you knew about it. And some of them she says yes, some of them she says I didn't do that. Looking at the answer, it seems like fairly typical of an answer that would be a complaint in court. So what more do you think she should have put in the answer to show that she didn't have knowledge of the transactions she says she didn't have knowledge of? Well, I would preface my remarks by saying, Your Honor, the standard here is not whether this would have been a sufficient answer. The standard here is whether having submitted the answer late, having defaulted and having held a default, whether the information is enough to demonstrate sufficiently that she has a meritorious defense. And it does not. What should she have put in? Well, she certainly couldn't have put in any true facts with respect to the transaction involving the straw buyer purchase, because as we now know, she has admitted dishonesty, violating rules and regulations. I can only suggest to the court, because we have nothing else to go on, that that is the reason why we didn't get specific facts as to the other allegations as well. But in any event, I would point this out. Why is there a rule that general denials are not sufficient and specific facts have to be supplied? This case is the paradigm case that demonstrates why that rule is necessary. Ms. Yates could hide behind her general denials and could have done so had she not defaulted. But once you default, general denials are not enough, and we see that the only time Ms. Yates had to give specific facts, her specific facts verified allegations in the notice. So, again, my point is the Yates criminal case is really not relevant at all to what happened here, certainly not in favor of Ms. Yates. It's very relevant to the extent that this court expressly acknowledged that a theory and the only theory that permeates the FDIC's notice that diversion of a bank's funds for unauthorized purposes is a valid legal theory is the only legal theory that matters. This court acknowledged it. I think we're good. Thank you so much, counsel. I think I said one minute? Did I say two minutes? All right, two minutes.  Thank you, Your Honor. Very quickly, if you look at the recommended decision upon respondent's default, which is at ER 64, you have a statement of the case by the ALJ, and one of the allegations or facts that are found to be true is that Ms. Yates caused the bank to file false call reports in violation of 12 U.S.C. So false call reports was front and center in the criminal case, so it's absolutely not true that the criminal case has nothing to do with this. We have the ALJ specifically saying Ms. Yates filed false call reports, and we know from the criminal case that those call reports were not false. Second, there's the Fifth Amendment. The Fifth Amendment is something that has not been discussed by the FDIC. That is something that does limit us in what we can provide as more of a freewheeling narrative about things. I think it is enough in that case and is something that is appropriate for this case that those Fifth Amendment concerns did exist, and we were right to be concerned about those given the eventual conviction reversal. And so to say that we did not do something, that the notice of charges says that we did, should be enough without having to provide some free-forming narrative about what it is we did sufficient to satisfy the FDIC, who, by the way, was very involved in the criminal trial and absolutely knows what our defenses were and what we denied. Third, I heard counsel say over and over again that this Court somehow validated a legal theory that was charged against us that is similar to what's in the notice. This Court may have said that there was a valid legal theory, but did not say that the jury found that we violated that legal theory. What the Court said in the criminal case was that it was impossible to know, given how heavily the criminal case attorneys relied on the invalid legal theories. So, yes, there is a valid theory, but it is not something that the jury found. And the fact that the jury found these things against us is what the ALJ and the Board relied on. And it says it right here at ER 87. Given the state of mo- this is the ALJ's words. Given the state of mo- practice to date, respondent appears to envision a defense that is closely aligned with claims that are presented in the course of the viral criminal action, an action which, according to respondent, led to her conviction. The ALJ absolutely relied on the criminal conviction, and so did the Board. And I think I'm 20 seconds over. All right. Thank you very much, counsel. Thank you both for your argument and briefing in this very interesting case. This matter is submitted.
judges: OWENS, MILLER, Pregerson